Hand-Delivered

FILED
Statesville, NC

JUN 11 2025

Clerk, US District Court
Western District of NC

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**

Aquil Martin,                      Civil Action Number: 5:25-CV-053-KDB-DCK

    Plaintiff,

v.

Trans Union LLC

    Defendant.

## **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

### INTRODUCTION

1. Plaintiff Aquil Martin ("Plaintiff") respectfully submits this opposition to Defendant Trans Union LLC's ("Trans Union") Motion to Dismiss the Amended Complaint. Trans Union's motion rests on two narrow arguments: (1) that Plaintiff supposedly failed to allege a specific inaccuracy in his credit reporting disseminated to a third party, and (2) that Plaintiff did not allege he directly disputed the information with Trans Union. Both contentions are incorrect. The Amended Complaint, supplemented by the documents properly before this Court, details a clear *inaccuracy* – an erroneously reported late payment on Plaintiff's First Premier Bank credit card account – and alleges that this false information was communicated to lenders, resulting in credit denials and other harms. The Amended Complaint further makes clear that Plaintiff notified Trans Union of the dispute (via a Consumer Financial Protection Bureau complaint that Trans Union received on December 8, 2024) and that Trans Union failed to conduct the required reasonable reinvestigation within 30 days. These facts, accepted as true, state a valid claim under the Fair Credit Reporting Act ("FCRA"), including 15 U.S.C. § 1681e(b) (failure to assure maximum accuracy) and § 1681i(a) (failure to reasonably reinvestigate).

2. FCRA was enacted to protect consumers like Plaintiff from the very harms at issue here – inaccurate credit reporting and negligent or willful failure to correct errors. Plaintiff has alleged concrete and particularized injuries: denial of credit, higher interest rates on loans, emotional distress, reputational damage, and out-of-pocket costs. These are exactly the types of actual damages that the FCRA is designed to remedy. Accordingly, Trans Union's motion to dismiss should be denied in its entirety. If the Court nonetheless perceives any pleading deficiency, Plaintiff requests leave to amend, as justice requires, so that this case may be decided on its merits rather than on technicalities.

1

## LEGAL STANDARD

3. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. To survive, a complaint must contain factual allegations that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must *draw all reasonable inferences* in the plaintiff's favor and *accept all well-pleaded facts* as true, *disregarding mere legal conclusions*. A claim is plausible if the factual content allows the Court to infer that the defendant is liable for the misconduct alleged. In the FCRA context, courts have recognized that whether procedures were reasonable or an investigation was adequate are often fact questions ill-suited for resolution on the pleadings. See *Smith v. Experian Info. Sols., Inc.*, 933 F.3d 459, 465 (6th Cir. 2019) (Whether the credit reporting agency has committed an FCRA violation is typically a question for the jury.). At this stage, Plaintiff need only allege facts sufficient to raise a right to relief above the speculative level. As demonstrated below, Plaintiff easily meets this standard.

## ARGUMENT

### I.

### The Amended Complaint Alleges a Specific Inaccuracy Published to Third Parties

4. Trans Union first argues that Plaintiff did not plead a specific inaccuracy in his credit report or its dissemination to any third party. This is incorrect. Plaintiff's Amended Complaint identifies a very specific piece of false information: an "alleged inaccurate late payment" reported on his First Premier Bank credit card account. In his CFPB dispute (which is expressly referenced in the Amended Complaint), Plaintiff elaborated that the late payment was reported for November 2021 on his First Premier Bank account (account ending in 0667). Plaintiff further explained why this information is inaccurate – it was a clear billing error because Plaintiff never received the billing statement that month, meaning he was marked late for a payment he never knew was due. Thus, the falsity of the late-payment entry is not a matter of subjective opinion; it is an objective error in the report. Trans Union was reporting that Plaintiff made a late payment when, in fact, any delinquency was attributable to the creditor's failure to send a timely statement. Reporting a consumer delinquent under such circumstances is patently inaccurate and misleading.

5. Under Fourth Circuit law, factual inaccuracies or materially misleading reporting are actionable under the FCRA. *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (information is inaccurate if it is either factually incorrect or presented in a manner that creates a misleading impression so as to infer an adverse effect on the consumer). Here, Trans Union's report indicated that Plaintiff was 30 days late on his credit card in November 2021 – a serious

negative mark – even though Plaintiff was not truly at fault for any late payment. Such an entry is undeniably misleading in a way likely to have an adverse effect on creditors' decisions, satisfying the *Dalton* standard. In short, Plaintiff has pleaded a clear-cut inaccuracy.

6. Moreover, Plaintiff specifically alleged that this inaccurate late payment appeared on consumer reports that Trans Union provided to Plaintiff's potential lenders, resulting in credit denials and other adverse outcomes. The Amended Complaint states that "Plaintiff was denied credit applications with financial institutions due to the inaccurate information on his credit report that Trans Union failed to correct despite proper notice." By alleging that financial institutions denied him credit based on his Trans Union report, Plaintiff plainly identifies the "consumer report" and the third parties to whom it was published – e.g., PNC Bank, Bank of America, and other lenders who reviewed his Trans Union file in connection with credit applications. No magic words are required to plead publication to a third party; the allegation that multiple lenders used Trans Union's report to Plaintiff's detriment is more than sufficient.

7. At the pleading stage, a consumer is not required to list the name and address of each individual bank or creditor that pulled his report. It is enough that Plaintiff alleges his Trans Union report was furnished in the course of multiple credit applications, and that those third parties saw and acted upon the inaccurate late payment entry. Plaintiff specifically recounts that he was denied credit applications with financial institutions and had to accept credit at significantly higher interest rates because of Trans Union's false reporting. These allegations necessarily imply that Trans Union communicated the erroneous information to one or more third-party creditors, who in turn made adverse credit decisions. This satisfies any publication element for FCRA claims. See *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208-09 (2021) (publication of inaccurate information to third-party creditors constitutes a concrete injury). In fact, Plaintiff has gone beyond mere notice pleading by identifying the account (First Premier Bank credit card) and the nature of the error (inaccurate late payment from Nov. 2021). If Trans Union requires further specifics (such as the account number or which lender saw which report), those are details to be developed in discovery; at this stage, Plaintiff's allegations must be taken as true and construed in his favor. Notably, Trans Union itself has acknowledged the account in question in its briefing, referencing Plaintiff's allegation of a late payment which relates to a revolving credit card with First Premier Bank. Thus, there is no mystery about what item is at issue. Plaintiff has therefore stated a prima facie case that Trans Union included inaccurate information in his credit file and in the reports reviewed by his creditors.

8. In sum, the Amended Complaint does allege a specific inaccuracy (the November 2021 late payment on the First Premier account) and its publication to third parties (Plaintiff's prospective lenders). Under binding authority, this is sufficient to satisfy the "inaccuracy" element of FCRA claims. *Dalton*, 257 F.3d at 415 (inaccuracy is a threshold showing under §§1681e(b) and 1681i). Trans Union's argument to the contrary ignores the well-pleaded facts and imposes an unfair heightened pleading standard not required by Rule 8. The Court should reject any suggestion that Plaintiff's claim fails for lack of identifying an "inaccuracy reported to a third party." The pleadings make that element abundantly clear.

## II.

## Plaintiff Adequately Alleged that He Disputed the Inaccuracy to Trans Union, Triggering Trans Union's Duty to Reinvestigate

9. Trans Union next argues that it had no obligation to reinvestigate Plaintiff's dispute because, according to Trans Union, Plaintiff failed to allege he notified Trans Union "*directly*" of the dispute. In other words, Trans Union seeks dismissal on the theory that Plaintiff only submitted his dispute through the CFPB (Consumer Financial Protection Bureau) rather than by writing or calling Trans Union. This argument elevates a technical distinction over the reality of what occurred, and it is not a proper basis for dismissal at this stage.

10. As a factual matter, Plaintiff did notify Trans Union of the dispute. The Amended Complaint explicitly states: on December 8, 2024, Plaintiff filed a dispute through the Consumer Financial Protection Bureau against Trans Union LLC, for an alleged inaccurate late payment and that Trans Union "received the dispute on December 08, 2024". The pleading further alleges that Trans Union then had 30 days, by law, to conduct a reinvestigation but failed to conduct a reasonable reinvestigation in 30 days or less. In other words, Plaintiff affirmatively pleads that Trans Union was put on notice of the dispute on that date – which is the critical trigger for Trans Union's §1681i obligations. Trans Union's own motion papers acknowledge that Plaintiff's operative complaint is alleging that Trans Union failed to respond to a CFPB complaint within 30 days. Thus, there is no genuine question that Plaintiff has alleged a dispute was communicated to Trans Union. The only question is whether Trans Union can escape liability because the notice came via the CFPB's consumer complaint portal rather than a letter mailed directly to Trans Union.

11. Legally, Trans Union relies on the FCRA's wording that the duty to reinvestigate arises when "the consumer *notifies the agency directly* ... of such dispute." 15 U.S.C. § 1681i(a)(1)(A). Trans Union also cites FTC staff commentary opining that CRAs need not respond to disputes

4

raised by *third parties* without the consumer's involvement. But these authorities do not warrant dismissal here. Unlike a dispute initiated by an unrelated third party (for example, a credit repair organization sending a dispute on a consumer's behalf without the consumer's direct participation), the CFPB complaint in this case was filed by the consumer himself. Plaintiff personally submitted his dispute via the CFPB's official online portal, which is a conduit that transmits consumer complaints directly to the company involved. Indeed, the CFPB's system is designed to forward the consumer's own words and documentation to the company and to facilitate the company's response. Here, the CFPB portal records show that Plaintiff's detailed dispute was "Sent to company on 12/8/2024" – the very same day Plaintiff submitted it. Trans Union thus received Plaintiff's dispute (not some third-party's dispute) through an electronic system. Trans Union even responded through that system indicating it understood the dispute came from Plaintiff and still chose to address it with a response.

12. In analogous contexts, courts have recognized that what matters is that the consumer's intent to dispute reaches the CRA. See *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 149 (4th Cir. 2008) (noting FCRA reinvestigation duties are triggered upon notice of dispute from the consumer, and emphasizing the role of notice in protecting consumers' rights). Here, Trans Union had unequivocal notice: the CFPB sent the complaint describing Plaintiff's issue in detail, and Trans Union was aware enough of the dispute to send a reply through the CFPB system. Trans Union's position asks this Court to ignore Plaintiff's actual notification – and Trans Union's actual knowledge – simply because of the channel through which it was conveyed. That would be an overly formalistic result inconsistent with the consumer-protective purpose of the FCRA.

13. Plaintiff himself is the one who submitted the dispute; the CFPB did not create a dispute out of thin air – it merely forwarded Plaintiff's complaint to Trans Union. Functionally, this is no different than if Plaintiff had filled out a dispute form on Trans Union's own website or mailed a letter: in each case, the consumer is the one initiating the process. Trans Union cites out-of-circuit cases such as *Kihagi v. Nationstar Mortg., LLC*, 2023 U.S. Dist. LEXIS 116322 (C.D. Cal. July 5, 2023), which held that sending a dispute to the CFPB is not the same as a direct dispute to a CRA. Even if that non-binding authority were considered, it is distinguishable. Those cases did not involve a situation where the CRA actually received and responded to the dispute. Here, Trans Union's own conduct (providing a template response and updating the CFPB portal) demonstrates that it treated the CFPB-forwarded complaint as a dispute from the consumer – it had actual notice and chose to respond. Trans Union cannot now claim it was free to ignore the

5

dispute simply because it came via CFPB. Once Trans Union opted to engage and answer the complaint, it cannot plausibly argue it lacked notice or that §1681i was never triggered.

14. At a minimum, whether Plaintiff's CFPB complaint constituted sufficient notice "to the agency directly" is a question of fact inappropriate for resolution on a motion to dismiss. The Amended Complaint alleges that Trans Union "received" Plaintiff's dispute on December 8, 2024. The Court must accept that allegation as true at this stage. If Trans Union contends that receiving a dispute through a government portal is somehow not "receiving" a dispute from the consumer, that is a semantic argument that does not negate the well-pleaded fact that notice was given. Trans Union's technical defense, if accepted, would create a gaping loophole allowing CRAs to ignore disputes funneled through the CFPB – the very agency tasked by Congress to oversee and enforce consumer reporting obligations.

15. Furthermore, Plaintiff's allegations do not rest solely on the initial CFPB complaint. He asserts that Trans Union wholly failed to conduct a "reasonable reinvestigation" of the disputed item. Trans Union's response was merely a *"template Automated Consumer Dispute Verification (ACDV) report"* that provided no meaningful details or corrections. In other words, Trans Union processed the dispute in a perfunctory way but did not actually investigate the merits of Plaintiff's claim that the late payment was an error. Even after Plaintiff's complaint, the inaccurate late payment continued to appear on his credit report, as evidenced by the fact that Plaintiff's next credit report still showed the item and he continued suffering credit denials. A reasonable inference from the Amended Complaint is that Trans Union either failed to forward all relevant information to First Premier Bank, failed to genuinely consult any evidence beyond the automated response from the creditor, or otherwise failed to take the steps a reasonably prudent agency would take to resolve a consumer's dispute. Each of these failures would violate §1681i's requirement of a good-faith, timely reinvestigation of disputed information. See *Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426, 431 (4th Cir. 2004) (under analogous FCRA provisions for furnishers, a merely cursory or automated review of a dispute is not "reasonable" as a matter of law).

16. In summary, Plaintiff has adequately alleged that he notified Trans Union of his dispute, thereby triggering Trans Union's duty to investigate under 15 U.S.C. § 1681i. The fact that the notice was conveyed via the CFPB does not negate the core allegation that Trans Union had notice and failed to fulfill its statutory obligations. Plaintiff's FCRA claim should not be dismissed on this basis. Trans Union's contrary position invites an unjust result where a credit bureau can avoid liability by quibbling over the method of communication despite having actual knowledge of a

6

consumer's dispute. The Court should decline that invitation, especially at the pleading stage where Plaintiff's allegations of notice must be taken as true.

## CONCLUSION

For the foregoing reasons, Plaintiff has adequately and plausibly alleged that Trans Union violated the FCRA by reporting inaccurate information and failing to reasonably reinvestigate Plaintiff's dispute, and that these violations caused substantial harm. Accordingly, Defendant's Motion to Dismiss should be **DENIED**. Plaintiff respectfully requests that the Court enter an Order denying the motion in its entirety. Plaintiff also asks for such other and further relief as the Court deems just and proper, including, if necessary, leave to amend the complaint to cure any technical pleading issues.

Pursuant to 28 U.S. Code § 1746, I verify under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 11, 2025.

*Aquil Martin*

Respectfully Submitted,
/s/ Aquil Martin
Aquil Martin
Plaintiff
martinaquil09(@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 11th, 2025 I used USPS to send a true and correct copy of the foregoing Plaintiff's Opposition To Defendant's Motion To Dismiss first class postage prepaid, in the United States Mail address as followed:

Marc F. Kirkland
mkirkland@qslwm.com
QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.
6900 Dallas Parkway, Suite 800
Plano, Texas 75024
Tel: (214) 560-5454
Fax: (214) 871-2111
***Counsel for Trans Union LLC***

*Aquil Martin*
/s/ Aquil Martin
Aquil Martin
603 S. Race St.
Statesville, NC 28677
martinaquil22@gmail.com
***Pro Se Plaintiff***